# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

WESTON MERRIOTT                             CASE NO.  5:23-CV-01421

VERSUS                                      JUDGE TERRY A. DOUGHTY

CITY OF BOSSIER CITY, ET AL.                MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Pending before the undersigned Magistrate Judge, on reference from the District Court, are three motions: (1) a Motion for Protective Order [doc. #95] filed by Defendant City of Bossier City; (2) a Motion to Dismiss for Lack of Subject Matter Jurisdiction [doc. #102] filed by Defendant City of Bossier City; and (3) a Motion to Quash Subpoenas [doc. #108] filed by David Montgomery, Jeffrey Free, Jeffery Darby, Vincent Maggio, Charles Jacobs, and Phyllis McGraw. The motions are opposed.  [docs. #97, 106, 109].

For reasons assigned below, **IT IS RECOMMENDED** that the Motion to Dismiss for Lack of Subject Matter Jurisdiction be **GRANTED**.  **IT IS ORDERED** that the Motion for Protective Order and the Motion to Quash Subpoenas are **DENIED AS MOOT**.

## Background

Plaintiff Weston Merriott ("Merriott") filed the instant action on October 9, 2023.  [doc. #1].  The controlling pleading, the Amended Complaint, was filed on May 24, 2024.  [doc. #54]. The Amended Complaint names the City of Bossier City ("the City"), as well as President of the

Bossier City Council Jeffrey Free ("Free"); Council members, David Montgomery ("Montgomery") and Jeffery Darby ("Darby"); and Bossier City Attorney, Charles Jacobs ("Jacobs") (collectively, "the individual Defendants"), as Defendants. Merriott seeks damages and declaratory and injunctive relief arising from alleged violations of the First Amendment of the United States Constitution. He also seeks civil penalties for alleged violations of Louisiana's Open Meetings Law and declaratory relief for alleged violations of the Louisiana Constitution.

This lawsuit arises from a series of events surrounding meetings of the Bossier City Council ("the Council"). On July 18, 2023, the Council held a regular public meeting. [doc. #54, p. 6]. At the start of the meeting, City Clerk Phyllis McGraw ("McGraw") notified the attendees of the Council's governing rules. *Id.*[1] During a public comment period, Merriott, a local journalist, spoke in favor of implementing term limits for the City's elected officials. *Id.*

The Council held another public meeting on August 1, 2023, ("the August 1 Meeting"). *Id.* at p. 7. During a public comment period, Merriott "criticiz[ed] the Defendants['] continued inaction" on the term limit issue and "criticized the decision of some council[]members to delay

---

[1] The Complaint quotes McGraw as stating the following:

> The City Council asks for order and decorum at our meetings. Please silence your cell phones. Anyone wishing to address the Council on any agenda item may approach and state their name and address for the record and shall be permitted three minutes to make their comments on the particular item that's up for discussion, with up to four speakers per side. All other audience members are asked to please observe the meeting quietly and if there is a need for audience members to hold a conversation or take a phone call you're asked to please step out of the meeting. City Council appointed Sergeant at Arms have been instructed to maintain decorum and ask anyone in violation to step out of the meeting in order to maintain orderly conduct of the meeting.

*Id.* This language draws on the Council's Resolution No. 56 of 2021 ("the Decorum Policy"). The Decorum Policy specifies that "no more than 4 speakers per side of the argument [under] discussion per Agenda item" may participate during public comment periods. [doc. #54-1, p. 4]. This provision is herein referred to as "the Speaker Limit."

action" on the issue by seeking outside counsel. *Id.* He "questioned the impartiality of the [chosen] outside counsel,[2] noting that [the attorney had] represented Councilmember Montgomery in a deposition, years prior." *Id.* Free interrupted Merriott, directing him to "stay on topic." *Id.* Montgomery then requested that City Attorney Jacobs respond to Merriott's assertions concerning the outside counsel, which Jacobs called "absolutely false." *Id.*

Two weeks later, the Council held a public meeting on August 15, 2023 ("the August 15 Meeting"). *Id.* at p. 8. At the start of this meeting, the Clerk, McGraw, read directly from portions of the Decorum Policy. *Id.* First, she stated that "[a]ny person making personal, impertinent or slanderous remarks or who shall become boisterous while addressing the Council shall be forthwith, by the President Pro-Tem, barred from further audience before the Council, unless permission to continue [be] granted by a majority vote of the Council." *Id.*[3] McGraw then stated that questions were to be directed to the Council "as a body," not to individual members, and warned the attendees that the Sergeant at Arms had been "instructed to maintain decorum." *Id.* During the public comment period later in the meeting, Merriott again spoke about term limits for elected officials. *Id.* at p. 9. Free interrupted Merriott and instructed him to "stay on topic and to only ask questions." *Id.* Darby then instructed McGraw to read the portion of the Decorum Policy containing the Conduct Prohibitions and Audience Ban, which she did. *Id.*

Five days later, Merriott sent a letter to members of the Council, Jacobs, and the City's Mayor "requesting that the Council respect his First Amendment rights and refrain from interrupting him [at Council meetings]." *Id.* at p. 10.

---

[2] Merriott does not identify "outside counsel" in this paragraph.

[3] The undersigned refers to the provision prohibiting "personal, impertinent or slanderous remarks" and boisterous conduct as "the Conduct Prohibitions." The provision allowing attendees to be "barred from further audience" is referred to as "the Audience Ban."

At the Council's meetings on August 29 and September 5, 2023 ("the September 5 Meeting"), McGraw again read the Decorum Policy. *Id.* During the public comment period of the September 5 Meeting, Merriott once again spoke about the term limit issue and reiterated his concerns from the August 1 Meeting about the impartiality of the City's outside counsel. *Id.* Montgomery interrupted Merriott and asked Free to remove him from the meeting. *Id.* at p. 11. Merriott continued speaking. *Id.* Montgomery declared that Merriott's "words had nothing to do with the agenda item" under discussion and again called for his removal. *Id.* Free "instructed Merriott to stick to the agenda and to not make any accusations against council[]members." *Id.* Merriott was not removed from the meeting. *Id.*

Immediately after the September 5 Meeting concluded, Darby and Montgomery, as well as McGraw and Council members Vincent Maggio and Donald Williams, met in private ("the Off-the-Record Conference") to "speak about changing the rules of public comment to limit comment to the beginning of [meetings.]" *Id.* at pp. 12-13. Darby asked McGraw to "draft new rules that would eliminate public comment at each agenda item." *Id.* at p. 12. Darby and Montgomery then "counted if they would have enough members to make the resolution in Defendant Free's absence." *Id.* Montgomery asked McGraw, "Free won't be here, so is 4 to 2 enough?" *Id.* McGraw confirmed this vote breakdown would be sufficient to pass the resolution. *Id.*

Audio of the Off-the-Record Conference was released by a local news outlet shortly thereafter. *Id.* In response to the leaked audio, Jacobs sent an email to the Council "and others" on September 8, 2023, indicating that an internal investigation had commenced and "there should not be any discussion about [the Off-the-Record Conference] without" first consulting his office.

4

*Id.* at pp. 13-14.[4]  Jacobs also "threatened to call the FBI to bring wiretapping charges against the person who released the audio."  *Id.*

On an unspecified date after the September 5 Meeting, Merriott filed "an open meetings complaint" with the Louisiana Attorney General concerning "his treatment by the City Council and the Council's subsequent closed meeting."  *Id.* at 14.

At the Council's meeting on September 19, 2023 ("the September 19 Meeting"), Merriott again spoke during the public comment period, this time objecting to the minutes of the September 5 Meeting referring to his comments as "disruptive."  *Id.* at p. 12.

On October 6, Jacobs responded to the letter Merriott had previously sent to the Louisiana Attorney General ("the October 6 Letter").  *Id.* at 14; *see also* [doc. #54-2].[5]  The October 6 Letter refutes several contentions Merriott posed in his earlier letter.  In the Letter, Jacobs denies the allegations "that a member of the public was threatened with arrest while giving public comment" during the September 5 Meeting.  [doc. #54-2, p. 1].  He also denies that the same member of the public "was instructed that he could not mention members of the Council or their actions."  *Id.* at p. 2.  Jacobs asserts that a "quorum of the Council" did not meet to deliberate prior to the September 5 Meeting.  *Id.*  He further indicates that the Off-the-Record Conference was an impromptu and "unplanned gathering of four City Council members" that included "a brief discussion concerning the timing of public comment in reaction to the actions of [Merriott.]"  *Id.*  Jacobs notes that Montgomery "never formally 'polled' or asked the four individuals concerning their individual vote."  *Id.*

---

[4] Jacobs' directive is herein referred to as "the Gag Order."

[5] The October 6 Letter has been incorporated into the pleadings.

Throughout this litigation, Defendants filed multiple motions to dismiss. [docs. #13, 15, 55-56]. The undersigned issued a Report and Recommendation [doc. #70] on August 30, 2024, recommending that the motions be granted in part and denied in part. On September 30, 2024, the District Court adopted the Report and Recommendation and entered a corresponding judgment. [doc. #78]. The only remaining claims are Merriott's federal First Amendment and state law Article I Overbreadth challenges to the Decorum Policy's Audience Ban and Speaker Limit. [doc. #70].

On March 25, 2025, the City filed a Motion for Protective Order [doc. #95]. The City asks that the Court enter an order prohibiting Merriott from taking the depositions of David Montgomery, Charles Jacobs, Jeffery Darby, Jeffrey Free, Donald Williams, Christopher Smith, Vincent Maggio, Phyllis McGraw, and Brian Hammons (collectively, the "Bossier City Employees"). On April 3, 2025, Merriott filed an opposition to the motion. [doc. #97]. Merriott argues that the notices of depositions were for the individuals responsible for the creation, adoption, and enforcement of the two speech rules still at issue in this case.

On April 17, 2025, the City filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. [doc. #102]. The City argues that Merriott's claims are now moot as the Council amended and revised its meeting decorum rules on April 17, 2025. (Memo in Support of M/Dismiss [doc. #102-1, p. 2]). "The so-called Audience Ban has been eliminated, and the Speaker Limit has been revised to retract the limit on speakers 'per side' of an agenda item." *Id.* Now, members of the public who violate the decorum policy's conduct prohibitions during a meeting may only be removed and barred during that meeting. *Id.* at p. 3. The new decorum rules no longer allow an indefinite ban and the need to apply for readmission. *Id.* As for the Speaker Limit, the new revisions allow eight speakers per agenda item rather than focusing on which side

6

of the argument a person will speak on. *Id.* Further, voluntary cessation does not apply as Merriott can only speculate that the City may reenact the Audience Ban and Speaker Limit. *Id.* at pp. 4-5. Finally, the City contends that Merriott is not entitled to attorney's fees because he has obtained no relief from this Court. *Id.* at p. 5.

On April 18, 2025, Merriott filed an opposition to the Motion to Dismiss. [doc. #106]. First, Merriott argues that since the City attached extrinsic evidence to its motion, it must be converted to a summary judgment. *Id.* at p. 7. Merriott contends that the City failed to even change its policy. *Id.* at p. 8. The certified copy of Resolution No. 21 of 2025 represents that the resolution was adopted on April 8, 2025; however, the City Clerk Phyllis McGraw certified that this was a true and correct copy of the resolution that was adopted on April 17, 2025. *Id.* Since there are discrepancies regarding the timing of passage of the resolution, the motion should be "flatly denied." *Id.*

Merriott next argues that the City's voluntary cessation of unconstitutional conduct cannot moot this case. *Id.* at p. 9. "A voluntary policy change alone will not moot a case." *Id.* Although the City alleges that the rules have been changed, no proof has been presented. *Id.* at p. 10. The City has also failed to make any comment acknowledging a desire to repeal the offending laws because of an understanding that they are bad policy, unconstitutional, or for any other reason. *Id.* Merriott contends that the City is not entitled to a presumption of good faith in its voluntary cessation after application of the pertinent factors: (1) the government's continued defense of the challenged policy; (2) the timing of the change is suspicious; and (3) there is an absence of controlling statement of future intention. *Id.* at p. 11. "[The City] has not had any 'change of heart' but rather is engaged purely in litigation posturing." *Id.* at p. 12.

Finally, Merriott argues that the new rules are still overbroad as they are not subject to any limiting construction or confining principle that restricts the amount of protected speech "they sweep in." *Id.* at p. 14. The Audience Ban still allows the President pro-tem to remove a public commenter for violating the rule prohibiting personal, impertinent, boisterous, or slanderous comments, and this speech is "wholly protected by the Constitution." *Id.* Merriott contends that the Audience Ban also fails as there are no limits to its construction. *Id.* at p. 15. The Audience Ban fails to provide any definitions, and the enforcement process is left entirely to the discretion of the President pro-tem. *Id.* As for the Speaker Limit, the limitation to eight speakers was adopted with no regard of how many individuals want to speak, what else is on the agenda, how long the meeting is, and how much business is pending before the Council. *Id.* at p. 16. There is already a forty-five-minute limit on discussion for each agenda item, and each speaker is already limited to a three-minute period. *Id.* The Speaker Limit also lacks any limiting construction or workable standards. *Id.* at p. 17.

On April 23, 2025, the City filed a reply in support of its Motion to Dismiss. [doc. #115]. It contends that Merriott's opposition "focuses on extraneous issues like a typographical error in the April 17th resolution, recycles claims that have already been dismissed, and then advances new critiques about the new decorum rules he hasn't pleaded." *Id.* at p. 1. Since this is a factual attack on this Court's subject matter jurisdiction, the City argues that referencing evidence does not convert it to a motion for summary judgment. *Id.* at p. 2. The clerical error in the April 17 resolution, which originally read April 8, has been formally resolved. *Id.* at p. 3. Additionally, the City contends that any argument regarding "personal, impertinent, boisterous, or slanderous comments" is irrelevant as all of Merriott's claims regarding that language were dismissed. *Id.* Merriott's argument that the eight-speaker limit remains infirm is not tied to any pending claims

in this case. *Id.* at p. 4. Rather, the Amended Complaint is directed at the newly repealed decorum rules. *Id.* Finally, the City maintains that Merriott's speculation is insufficient to overcome the presumption that it acted in good faith in revision of its rules. *Id.*

On April 18, 2025, David Montgomery, Jeffrey Free, Jeffery Darby, Vincent Maggio, Charles Jacobs, and Phyllis McGraw filed an Emergency Motion to Quash Subpoenas. [doc. #108]. They move to quash the subpoenas based on the pending motion to dismiss, Merriott's unilateral scheduling of the depositions, and their concern that Merriott intends to use the depositions to harass the Bossier City employees. [doc. #108-1, pp. 2-4]. On April 18, 2025, Merriott filed a response in opposition. [doc. #109]. Merriott argues that these officials are the only possible witnesses who can testify about the adoption, implementation, purpose, and potential future reinstatement of the rules. *Id.* at p. 1. Additionally, Merriott contends that the city employees do not meet the standard for quashing the subpoenas, the case is not moot, the counsel for these employees were appraised of his intention to hold depositions, and the accusation of harassment is "unsupported." *Id.* at pp. 1-4.

Accordingly, all motions are fully briefed. The matters are now ripe.

<u>**Law & Analysis**</u>

I.      **Legal Standard**

        *(a) 12(b)(1) Standard*

The Federal Rules of Civil Procedure sanction dismissal where the presiding court lacks subject-matter jurisdiction.[6] FED. R. CIV. P. 12(b)(1). As a Rule 12(b)(1) motion concerns the trial

---

[6] The federal courts have limited jurisdiction and cannot adjudicate claims absent a statutory conferral of jurisdiction. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012).

court's jurisdiction, the court is free to weigh relevant evidence and satisfy itself that it has the power to hear the case. *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)). Consequently, jurisdiction may be found lacking based upon (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). A Rule 12(b)(1) motion should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *In re FEMA Trailer Formaldehyde*, 668 F.3d at 287. When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the jurisdictional attack should be resolved first. *Ramming*, 281 F.3d at 161.

### (b) Mootness

A petitioner "must separately satisfy the case-or-controversy requirement of Article III, Section 2 of the Constitution." *Herndon v. Upton*, No. 19-111156, 2021 WL 116535, at *2 (5th Cir. Jan. 13, 2021) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). Jurisdiction is constrained to adjudicating "actual, ongoing controversies between litigants." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). Article III of the Constitution restricts federal courts' jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. "We are therefore permitted to adjudicate only live disputes." *Freedom from Religion Found., Inc. v. Abbott*, 58 F.4th 824, 831 (5th Cir. 2023) (quotation marks and citation omitted).

"[A] live controversy must maintain through each stage of the litigation." *Id.* "[A]ny set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *DeOtte v. State*, 20 F.4th 1055, 1064 (5th Cir. 2021) (citation omitted). "'One

way that happens is when a challenged policy is repealed.'" *Jackson v. Noem*, 132 F.4th 790, 793 (5th Cir. 2025) (quoting *U.S. Navy SEALS 1-26 v. Biden*, 72 F.4th 666, 672 (5th Cir. 2023)). "A case is moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *DeOtte*, 20 F.4th at 1064 (quotation marks and citation omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted).

### (c) 42 U.S.C. § 1983

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." 42 U.S.C. § 1983. The statute does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.* (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).

## II.    Conversion to Summary Judgment

Merriott argues that the City's motion to dismiss should be converted to a motion for summary judgment. [doc. #106, p. 7]. In support of his argument, Merriott cites to Federal Rule of Civil Procedure 12(d). *Id.* However, Rule 12(d) does not apply to motions to dismiss pursuant to 12(b)(1); instead, it applies to motions under 12(b)(6) and 12(c). *See* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")

The Fifth Circuit recognizes that a motion under Rule 12(b)(1) can present two different types of challenges to standing—one facial, the other factual. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *see also Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016). "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

A "factual attack" allows the Court to consider a broader range of materials in resolving the motion. *Williams v. Wynne*, 533 F.3d 360, 365 n.2 (5th Cir. 2008). The defendant can submit evidence together with the argument contesting jurisdiction, and the court is not limited to the facts pleaded in the Complaint. *Paterson*, 644 F.2d at 523. Instead, the Court has discretion to consider any evidence submitted by the parties such as affidavits, testimony, and documents. *Id.* While a district court is "empowered to consider matters of fact which may be in dispute," a motion to dismiss for lack of subject-matter jurisdiction "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161.

"In a factual attack, the plaintiff has the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Paterson*, 644 F.2d at 523. "Unlike in a facial attack where jurisdiction is determined upon the basis of the allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumptive truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the

existence of its power to hear the case." *Evans*, 657 F.2d at 663.  The Court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c).  *Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston, Texas*, 260 F. Supp. 3d 738, 754 (S.D. Tex. 2017).

Here, the City of Bossier filed its motion to dismiss along with supporting documents, including a certified copy of Resolution No. 21 of 2025.  [docs. #101, 104].  In opposition, Merriott submitted eight exhibits.  *See* [doc. #106].  Because the arguments regarding mootness rely on the documentary evidence submitted with the briefing on the motions to dismiss, they constitute a factual attack on the Court's jurisdiction.  Accordingly, the undersigned will not convert this motion to dismiss into a motion for summary judgment.

## III.    Implemented New Rules

The City argues that the new resolution moots the rest of Merriott's claims.  [doc. #102]. Merriott asserts that his claims are not moot as there is no proof that the new rules have been adopted, and further, even if they were adopted, the rules are still overbroad and violate the Constitution.  [doc. #106].  If the controversy between Merriott and the City has resolved to the point that they are no longer "adverse parties with sufficient legal interests to maintain the litigation," this court is without power to entertain the case.  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009).

This Court has already determined that the comment period for city council meetings is a limited public forum.  *See* [doc. #70, p. 15].  Limited public forums are spaces "opened for public expression of particular kinds or by particular groups."  *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001); *see also Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S.

819, 829-30 (1995) (describing campus facilities opened to varied student groups as a limited public forum).  The government is justified in reserving these spaces "for certain groups or the discussion of certain topics."  *Rosenberger*, 515 U.S. at 829; *see also Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 679 n.11 (2010) ("[G]overnmental entities establish limited public forums by opening property limited to use by certain groups or dedicated solely to the discussion of certain subjects.") (quotation omitted)). However, the government may not discriminate against speech on the basis of viewpoint or content in these forums, and restrictions must be reasonable in light of the purpose served by the forum. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001); *see also Martinez*, 561 U.S. at 679 n.11 ("[In a limited public forum], a governmental entity may impose restrictions on speech that are reasonable and viewpoint-neutral").

The only remaining claims in this case are Merriott's federal First Amendment and state Article I Overbreadth challenges to the Decorum Policy's Audience Ban and Speaker Limit.

The parties agree that the rights protected under Article I, § 7 of the Louisiana Constitution[7] are "coextensive with the First Amendment of the United States Constitution," so the Court can consider them together.  [doc. #18, p. 39] (citing *O'Daniel v. Indus. Serv. Sols.*, 922 F.3d 299, 307 (5th Cir. 2019)); *see also* [doc. #33, p. 57] ("Plaintiff does not disagree with Defendant's contention that the analysis and reasons supporting the dismissal of Plaintiff's First Amendment claims apply to the Louisiana free speech claims.")  A speech regulation is constitutionally overbroad if it "prohibits a substantial amount of constitutionally-protected freedoms [as] judged in relation to

---

[7] Article I, § 7 guarantees that "[n]o law shall curtail or restrain the freedom of speech of the press. Every person may speak, write, and publish his sentiments on any subject but is responsible for abuse of that freedom."  La. Const. art. I, § 7.

the regulation's plainly legitimate sweep." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1012 (5th Cir. 2023). The overbreadth must be substantial both in relation to that "legitimate sweep" and in an absolute sense. *United States v. Williams*, 553 U.S. 285, 292 (2008). "[A] broadly-written statute may have such a deterrent effect on free expression that it should be subject to a facial challenge even by a party whose own conduct may be unprotected." *Int'l Soc. For Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 499 (5th Cir. 1989) (citing *Thornhill v. Alabama*, 310 U.S. 88 (1940)); *see also McClelland*, 63 F.4th at 1012 ("[The overbreadth doctrine] enables a plaintiff to challenge a statute where it infringes on *third parties* . . . ." (alteration in original) (quotation omitted)). However, "overbreadth challenges are not permitted where a party raises only situations that are 'essentially coterminous' with their own conduct." *Seals v. McBee*, 898 F.3d 587, 599 (5th Cir. 2018) (quoting *United States v. Hicks*, 980 F.2d 963, 969-70 (5th Cir. 1992)); *see also Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985) (In cases where "the parties challenging the statute are those who desire to engage in protected speech that the" statute purports to prohibit, "[t]here is no want of a proper party to challenge the statute [and thus] no concern that an attack on the statute will be unduly delayed or protected speech discouraged.").

> (a) <u>Amended Rules</u>

>> (1) *Audience Ban*

The original Audience Ban stated: "Any person making personal, impertinent or slanderous remarks or who shall become boisterous while addressing the Council shall be forthwith, by the President Pro-tem, barred from further audience before the Council, unless permission to continue be granted by a majority vote of the Council."  [doc. #102-1].

Merriott argued that "[t]here are no criteria or guidelines within the rules for this process, and the very people that removed a citizen would decide" whether he could be "readmitted," noting "[a]n individual could be banned indefinitely."  [doc. #54, p. 19].  The City contended that moderators of governmental meetings must have discretion to remove disruptive persons.  [doc. #18, p. 23].  The undersigned agreed with Merriott, emphasizing that the lack of criteria guiding implementation of bans and readmission was "key to this finding."[8]  [doc. #70, p. 18].  Discretion cannot be limitless.  *Id.*

On April 17, 2025, the Council amended and revised its meeting decorum rules, and the Audience Ban now states: "Any person making personal, impertinent or slanderous remarks or who shall become boisterous while addressing the Council shall be forthwith, by the President Pro-tem, barred from further audience before the Council during that meeting."  [doc. #102-1].  The City argues that this resolution no longer contemplates an indefinite ban and eliminates the need to apply for readmission; thus, Merriott's claim is moot.  *Id.* at p. 3.  Merriott contends that the Audience Ban, even if properly amended, is still overbroad as it is vast, both to whom it applies to and to what speech is restricted.  [doc. #106, p. 14].  Further, Merriott maintains that the amended rules still improperly limit personal, impertinent, boisterous, and slanderous comments which are protected by the Constitution.  *Id.*  Regardless, however, Merriott contends the issues are not moot.

---

[8] The Court found that it would be improper to entertain Merriott's overbreadth challenge to the Conduct Prohibitions.  Accordingly, the undersigned recommended dismissal. The only claim left regarding this rule refers to the Audience Ban which allowed attendees to be "barred from further audience."  [doc. #70].

*(2) Speaker Limit*

The original Speaker Limited provided: "A maximum of forty-five minutes will be set aside for addressing the Council and no more than 4 speakers per side of the argument discussion per Agenda item."  [doc. #102-1].

Merriott argued that this provision "is overbroad because it prohibits the wholly protected speech of all speakers after the first four."  [doc. #54, p. 19].  Further, Merriott noted that "[d]ue to the lack of guidance, it is unclear how [the Speaker Limit] would be enforced without sweeping in large swaths of protected speech because the rules do not explain how to determine which 'side' a speaker is on."  [doc. #33, p. 18].  The City contended that the limitation on the number of speakers served the City's "strong governmental interest in efficiently moving through its agenda at council meetings."  [doc. #18, p. 22].  The undersigned, when recommending this claim survive dismissal, observed that, regarding the determination of which side a speaker is on, the "lack of criteria undercuts the presumptive reasonableness of the Speaker Limit."  [doc. #70, p. 19].

On April 17, 2025, the Council amended and revised its meeting decorum rules, and the Speaker Limit now states: "A maximum of forty-five minutes will be set aside for addressing the Council and no more than 8 speakers per Agenda item."  [doc. #102-1, p. 2].  The City argues that this amendment resolves the concerns expressed by Merriott and the undersigned.  *Id.* at p. 3.  Now, eight speakers may speak regardless of the side they are on.  *Id.*  Merriott contends, again, that even if properly amended, the Speaker Limit is still overbroad, because once the eight speakers have spoken, the rule "restricts *all* types of speech except for eight chosen individuals."  [doc. #106, p. 15].  Additionally, Merriott asserts that with the already imposed forty-five-minute limit on discussion for each agenda item and each speaker limited to three minutes, there is "no

legitimate reason to place a limit on the number of speakers." *Id.* at p. 16. Again, he contends that, regardless, the issues before the Court are not moot.

       (b) *Mootness & Voluntary Cessation Exception*

      First, the Court fails to see how a challenge to the enforcement of the Audience Ban and Speaker Limit presents a live controversy, given their repeal. The Fifth Circuit has observed that "it would be pointless . . . to enjoin the enforcement of a [policy] that is no longer in effect." *Int'l Women's Day Mar. Plan. Comm. v. City of San Antonio*, 619 F.3d 346, 357 (5th Cir. 2010) (quotation marks and citations omitted); *see also McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed"); *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003) ("[W]e, along with all the circuits to address the issue, have interpreted Supreme Court precedent to support the rule that repeal of a contested ordinance moots a plaintiff's injunction request, absent evidence that the City plans to or already has reenacted the challenged law or one substantially similar."). The Court finds that no live controversy exists following the April 17, 2025, repeal of the Audience Ban and Speaker Limit. *See Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015) ("Even when a plaintiff has standing at the outset, [t]here must be a case or controversy through all stages of a case."). "[I]f in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case is generally moot." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021). Since the Court finds no basis for granting injunctive or declaratory relief in Merriott's favor, it concludes that Merriott's overbreadth claims for the Speaker Limit and Audience Ban are moot.[9]

---

[9] Even if the Court were to consider the amended rules, the undersigned finds that the City has adequately addressed the areas previously identified as raising constitutional concerns. *See*

However, Merriott argues that the voluntary cessation exception applies to prevent dismissal of his claims. "[I]t is an exception to mootness that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Freedom From Religion Found.*, 58 F.4th at 833 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000)). In general, a defendant's voluntary conduct moots a case only if "it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Sossamon*, 560 F.3d 316, 325 (5th Cir. 2009).

But governmental entities bear a "'lighter burden' in proving that the challenged conduct will not recur once the suit is dismissed as moot." *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014) (quoting *Sossamon*, 560 F.3d at 325)). That is so because the courts presume that state actors, as public representatives, act in good faith. *See, e.g., Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) (citations omitted). For this reason, and "[w]ithout evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing." *Sossamon*, 560 F.3d at 325. Among other things, the government's ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception. *Freedom From Religion Foundation*, 58 F.4th at 833; *see also Nat'l Bank Police Ass'n v. D.C.*, 108 F.3d 346, 349 (D.C. Cir. 1997) ("[T]he mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists.").

---

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) (a facial challenge fails where there is no "realistic danger" that the law will "significantly compromise recognized First Amendment protections of parties not before the Court.").

In support of his argument, Merriott cites *Speech First, Incorporated v. Fenves*, to suggest that the City is not entitled to the presumption of good faith.  979 F.3d 319 (5th Cir. 2020). However, *Speech First* addressed voluntary cessation by a public university, not a governmental entity.  *Id.* at 328.  The Fifth Circuit has clarified that the "relaxed standard" applicable to government actors does not extend to public universities.  *Id.*  Thus, the factors considered in *Speech First* do not govern this case.

Merriott also asserts that the City has provided no proof of any formal policy change. However, the City submitted Resolution No. 21 of 2025, adopted on April 17, 2025, as part of its motion.[10]  [doc. #104].  The exhibit includes certified Council meeting minutes confirming the repeal of Resolution No. 1 of 2024 and the adoption of Resolution No. 21 of 2025.  *Id.*  This evidence sufficiently establishes that the rules have been changed.

Merriott further contends that the City never formally retracted prior statements or actions regarding the prior rules.  Yet Resolution No. 1 of 2024 was expressly repealed.  The Court finds that a formal retraction of past statements is unnecessary where the governing resolution has been formally and publicly repealed.

While Merriott argues that the City has made no statement regarding its future intentions and suggests the rules could be re-adopted at a future meeting, such speculation about possible future action does not overcome the presumption of good faith.  The power to reenact a repealed

---

[10] Merriott would have this Court deny the motion based on a typographical error that states the resolution was effective April 8, 2025, rather than April 17, 2025. This typographical error, however, does not affect or change the undersigned's ultimate substantive conclusion. Further, the certification by the Clerk affirms that the resolution was effective on April 17, 2025.

rule, without more, is not enough to support a reasonable expectation that the conduct will recur. Therefore, the Court finds that the voluntary cessation exception to mootness does **NOT** apply.

Accordingly, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED** to the extent it seeks dismissal of Merriott's request for injunctive or declaratory relief regarding the Audience Ban and Speaker Limit.[11]

## IV.    Attorney's Fees

In order to ensure that certain federal rights are adequately enforced, Congress enacted 42 U.S.C. § 1988, which provides that a prevailing party in certain civil rights actions, including § 1983 actions, may recover "a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b). The Fifth Circuit has set forth three requirements for a plaintiff to establish prevailing party status: (1) the plaintiff must achieve judicially sanctioned relief; (2) the relief must materially alter the legal relationship between the parties; and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered.  *Veasey v. Abbott*, 13 F.4th 362, 368 (5th Cir. 2021) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001)); *see also Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (stating

---

[11] In the Amended Complaint, Merriott sought declaratory and injunctive relief, as well as compensatory and nominal damages and attorney's fees and costs.  The Court understands, however, that Merriott seeks only injunctive and declaratory relief as to his facial challenges to the Bossier City policies.  Consequently, the fact that he requested damages prior to the dismissal of his as-applied claims is not relevant to the question of mootness.  Neither party raised any argument with regard to damages, nor is the undersigned aware of authority entitling a plaintiff to monetary damages based upon a facial unconstitutionality claim.  *See generally Freedom Path. Inc. v. Internal Rev. Serv.*, 913 F.3d 503, 508 (5th Cir. 2019) ("[a] facial challenge to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual.").

that a plaintiff may qualify as a prevailing party when he achieves "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.").

Here, Merriott has achieved no judicially sanctioned relief. Since Merriott is not a prevailing party, he is not entitled to attorney's fees. Accordingly, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED** insofar as it seeks to dismiss Merriott's request for attorney's fees.

## V.    Motion for Protective Order and Motion to Quash Subpoenas

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . ." FED. R. CIV. P. 26(c)(1). Thereafter, upon a showing of good cause, a court may issue an order to

> protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including [an order] . . . (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . .

FED. R. CIV. P. 26(c)(1)(A)-(D). Furthermore, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines, inter alia, that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C)(iii).

The party seeking the protective order must establish good cause for entry of the order by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *see also*, *In re*

*Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).  Furthermore, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Rule 25 provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."  FED. R. CIV. P. 45(d)(3)(A)(iv).  Furthermore, "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information."  FED. R. CIV. P. 45(d)(3)(B)(i).

Since the undersigned recommends dismissing all claims remaining in this case, the Motion for Protective Order and the Motion to Quash Subpoenas are now **MOOT**.  Accordingly, **IT IS ORDERED** that the Motion for Protective Order and the Motion to Quash are **DENIED AS MOOT**.[12]

## <u>Conclusion</u>

For the above-stated reasons,

---

[12] Although the undersigned has ruled on the City's Motion for Protective Order and Bossier City Councilmembers' Motion to Quash Subpoenas within a Report and Recommendation, these motions are not excepted in 28 U.S.C. § 636(b)(1)(A) and not dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure. Therefore, these orders issue of the date of this Report and Recommendation. Any objection/appeal must be made to the district judge in accordance with Rule 72(a) of the Federal Rules of Civil Procedure within fourteen (14) days of this date.

**IT IS RECOMMENDED** that the Motion to Dismiss for Lack of Subject Matter Jurisdiction [doc. #102] filed by Defendant City of Bossier City be **GRANTED** and the case be **DISMISSED WITHOUT PREJUDICE**.

**IT IS ORDERED** that the Motion for Protective Order [doc. #95] filed by Defendant City of Bossier City is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Motion to Quash Subpoenas [doc. #108] filed by Defendants David Montgomery, Jeffrey Free, Jeffery Darby, Vincent Maggio, Charles Jacobs, and Phyllis McGraw is **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 2nd day of May, 2025.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE